UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rebecca J. Wall, individually and
on behalf of all others similarly
situated,

                  Plaintiff,                **MEMORANDUM OPINION
                                                AND ORDER**
    v.                                  Civil No. 12-1584 ADM/TNL

Richard W. Stanek,
in his official capacity only,

                  Defendant.

---

A.L. Brown, Esq., Capitol City Law Group, LLC, Saint Paul, MN, on behalf of Plaintiff.

Paul R. Hannah, Esq., and Toni A. Beitz, Esq., Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Defendant.

---

## I.  INTRODUCTION

On May 13, 2014, the undersigned United States District Judge heard oral argument on Defendant Richard W. Stanek's ("Stanek") Motion for Summary Judgment [Docket No. 20] and Plaintiff Rebecca J. Wall's ("Wall") Motion for Partial Summary Judgment [Docket No. 24]. For the reasons stated below, Defendant's motion is granted and Plaintiff's motion is denied.

## II.  BACKGROUND

At 1 a.m. on June 20, 2011, Hennepin County Sheriff's Deputy Barbara Russeth ("Russeth") stopped a vehicle driven by Wall on suspicion of impaired driving. Russeth Aff. [Docket No. 27] Ex. A ("Incident Report"). Russeth conducted field sobriety tests during which she claims Wall exhibited poor balance and failed the field sobriety tests. In a Preliminary

Breath Test, Wall produced a blood alcohol concentration reading of .109.[1] Based on these results, Russeth arrested Wall for driving while impaired ("DWI") and arranged to have her car towed. Id.

Minnesota law provides anyone who drives a vehicle in Minnesota gives implied consent "to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1. "The test may be required of a person when an officer has probable cause to believe the person was driving . . . while impaired." Minn. Stat. § 169A.51, subd. 1(b). For a person with one prior DWI offense, refusal to submit to a probable cause test can result in that person having their license revoked for not less than two years.[2] Minn. Stat. § 169A.52, subd. 3(3) and (4).

At 1:40 a.m., after Russeth had brought Wall to the patrol headquarters, Russeth read Wall the Minnesota Implied Consent Advisory, which is required before administering a urine or blood test. Minn. Stat. § 169A.51, subd. 2. Largely quoting the language from the statute, the Implied Consent Advisory recites:

1. Minnesota law requires you to take a test to determine:

   a.) if you are under the influence of alcohol . . .

2. Refusal to take a test is a crime. . . .

4. Before making your decision about testing, you have the right to consult with an attorney. . . .

---

[1] The legal limit for blood alcohol concentration is .08, as measured within two hours of the time of driving. Minn. Stat. § 169A.20, subd. 1(5). Wall argues that the officer did not reveal to her that her breath registered above the legal limit. However, she does not challenge Officer Russeth's probable cause to arrest her.

[2] Wall pled guilty to a prior DWI in 2004.

2

Russeth claims that when she heard that refusal to take a test is a crime, she felt she had no choice but to consent.  Wall chose to provide a urine sample.  However, Wall claims that Russeth would not allow her privacy and she could not provide a urine sample with Russeth watching.  Therefore, Russeth transported Wall to the Hennepin County Medical Center ("HCMC"), arriving there at approximately 2:41 a.m.  Russeth directed a Registered Nurse at HCMC to collect blood from Wall for analysis.  After completion of the blood draw, Wall was charged with Third Degree DWI.  See Incident Report.

The blood sample was analyzed and Wall's blood alcohol concentration, over two hours after she was pulled over, was .06, which is below the legal limit.  All criminal charges against Wall were later dropped.

Based on these facts, Wall has filed this action under 42 U.S.C. § 1983 claiming that Hennepin County's use of the Implied Consent Advisory is an unconstitutional search and seizure under the Fourth Amendment.  Pl.'s Resp. [Docket No. 37] 7. Wall claims her consent was not voluntary but rather coerced by Hennepin County's policy of using the implied consent law to avoid the warrant requirement.  Wall sues Richard W. Stanek, Sheriff of Hennepin County, in his official capacity only, for maintaining an impaired driving enforcement policy which required employees of the Hennepin County Sheriff's Office to follow Minnesota's implied consent law while enforcing Minnesota's DWI laws.  Id. at 1-2; see also Compl. [Docket No. 1] ¶ 2.

Hennepin County claims that its officers follow Minnesota law and that Deputy Russeth did so scrupulously such that Wall's freedom of refusal was preserved and her consent was freely given according to the law.

### III.  DISCUSSION

**A.  Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.  42 U.S.C. § 1983**

"Section 1983 imposes liability for certain actions taken 'under color of' state law that deprive a person 'of a right secured by the Constitution and laws of the United States.'"  Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)); 42 U.S.C. § 1983.

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."  Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Ky. v. Graham, 473 U.S. 159, 165 (1985)).  A municipality, such as Hennepin County, may be liable under § 1983 only where a policy or custom of that entity caused the alleged constitutional violation.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-92

(1978). Stated another way, a local government is liable under § 1983 only where its policy or custom is the "moving force" behind a constitutional violation. See id. at 694-95. Under certain circumstances, a municipality's failure to adequately train its police officers can be such a policy or custom. City of Canton v. Harris, 489 U.S. 378, 380 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388, 390 (plaintiff must show "the need for more or different training"). In the Eighth Circuit, deliberate indifference must be established by showing that a municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. See Thelma D. v. Bd. of Educ., 934 F.2d 929, 934 (8th Cir. 1991). A plaintiff can show such notice either by showing: (1) failing to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of constitutional violations put the municipality on notice that its employees' responses to recurring situations are insufficient. Id. at 934-35.

**C.  Warrant and Implied Consent Advisory**

Prior to 2013, the Minnesota Supreme Court had established that the rapid dissipation of alcohol in the bloodstream alone constituted a sufficient exigency to draw blood without a warrant, State v. Shriner, 751 N.W.2d 538, 549-50 (Minn. 2008), and also that Minnesota's Implied Consent and Refusal Law was constitutional. State v. Netland, 762 N.W.2d 202, 212-13 (Minn. 2009).

However, in 2013, reasons arose to question these conclusions. In 2010, Tyler McNeely was arrested for DWI in Missouri. He was read Missouri's implied consent law and refused to

provide a blood sample. After McNeely refused to be tested, the arresting officer conducted a warrantless forcible blood draw. McNeely sought to suppress its results. Affirming the lower court, in January 2012, the Missouri Supreme Court held that this warrantless, forcible blood draw was unreasonable and violated the Fourth Amendment. Missouri v. McNeely, 358 S.W.3d 65 (Mo. 2012), rehearing denied (Mar. 6, 2012). Missouri petitioned for certiorari and on September 25, 2012, the United States Supreme Court granted its petition. Missouri v. McNeely, 133 S. Ct. 98 (2012). In mid-April 2013, the U.S. Supreme Court held that McNeely's unconsented to, forcible blood draw violated the Fourth Amendment and found that the evanescent nature of alcohol was but one factor to consider when evaluating whether exigent circumstances existed to justify a warrantless blood draw. Missouri v. McNeely, 133 S.Ct. 1552 (2013).

In light of the McNeely decision, the U.S. Supreme Court remanded the case of Wesley Brooks to the Minnesota Supreme Court for reconsideration. Brooks v. Minnesota, 133 S. Ct. 1996 (April 23, 2013). Brooks' case arose out of three separate driving incidents that took place in 2009 and 2010. In each incident, the police read, or at least tried to read, Brooks the Implied Consent Advisory. In accordance with the advisory, Brooks was offered the opportunity to speak to a lawyer and he availed himself of that opportunity. In the first instance, after speaking to his lawyer, Brooks agreed to provide a urine sample. In the second, he claimed he could not urinate, and after asking to talk to his attorney for a second time, he consented to taking a blood test. In the third incident, Brooks again agreed to take a urine test. Brooks argued that under McNeely, the warrantless searches of his blood and urine could not be upheld solely because of the exigency created by the dissipation of alcohol in the body. The Minnesota Supreme Court

agreed. State v. Brooks, 838 N.W.2d 563, 567 (Minn. 2013). The McNeely decision instructed Minnesota courts that "exigent circumstances, based in part on the rapid dissipation of alcohol in a suspect's body, may allow police to obtain a blood sample without a warrant but that courts must determine whether exigency exists on a case-by-case basis and consider the totality of the circumstances." Id. Brooks argued that he did not consent because he agreed to submit to chemical testing only after the police told him that refusal to submit to the testing was a crime. He also argued that any consent implied from Minnesota's implied consent law is unconstitutional. First, the Minnesota Supreme Court reaffirmed that under Minnesota's statutory scheme "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test."[3] Id. at 570. Next, the Court looked to the totality of the circumstances for any other indications of coercion. Finding none, the Court held that Brooks voluntarily consented to the searches at issue in his case. Id. at 571-72. The United States Supreme Court denied Brooks' petition for writ of certiorari. Brooks v. Minnesota, 134 S. Ct. 1799 (April 7, 2014).

**D. Wall's Monell Claim**

The Minnesota Supreme Court's decision in Brooks makes clear that Wall does not have valid Monell claims against Hennepin County. Based only on the reading of the Implied Consent Advisory, Wall cannot prove that a custom, policy or practice violated her constitutional rights under the Fourth Amendment because Hennepin County's implied consent advisory is simply an extension of Minnesota's implied consent law. Other than Russeth's reading of the Implied Consent Advisory, Wall makes no further factual allegations that she was coerced. Her

---

[3] Wall argues that the Supreme Court's decision in Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968) should dictate how this Court analyzes the constitutionality of Minnesota's implied consent law. Brooks explicitly rejects this argument, ruling that "[u]nlike Bumper, the Minnesota Legislature has given those who drive on Minnesota roads a right to refuse the chemical test." 838 N.W.2d at 571.

argument relies entirely on the Court finding that the reading of the Implied Consent Advisory is in itself coercion. Since the Minnesota Supreme Court, under rigorous analysis of the most recent U.S. Supreme Court precedent, has found that the implied consent law is constitutional, Wall's claims cannot survive by arguing that she was coerced by the implied consent advisory.

Finally, even if the Minnesota Supreme Court had found the implied consent law unconstitutional, Wall still would not have had a claim. Her arrest occurred in 2011, before the constitutionality of Minnesota's implied consent law became settled law. Given the uncertainty of the law, as discussed above, Wall cannot show that Hennepin County demonstrated deliberate indifference, i.e., that Hennepin County had <u>notice</u> that its procedures were inadequate and likely to result in a violation of constitutional rights.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 20] is **GRANTED**;

2. Plaintiff's Motion for Partial Summary [Docket No. 24] is **DENIED**; and,

3. All claims in the Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 18, 2014.